Thomas SIMS, Appellant,

v.

STATE of Indiana, Appellee.

No. 32S01–9210–CR–870.

Supreme Court of Indiana.

Oct. 28, 1992.

R. Mark Inman, Elizabeth K. Hayes, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

ON CRIMINAL PETITION
TO TRANSFER

GIVAN, Justice.

The Court of Appeals in an opinion reported at 591 N.E.2d 1044 reversed appellant's conviction of three counts of Child Molesting, class C felonies. We also reverse appellant's conviction but for a different reason.

The victim, Z.G., and his family moved into a first floor apartment. The appellant and his family lived in the second floor apartment in the same house. The two families were interrelated. Z.G. reported to others and finally to his mother that appellant had sexually fondled him on three separate occasions and had shown him pornographic magazines.

■ The Court of Appeals reversed this case because defense counsel did not object to the victim's father testifying as follows:

"Q. When you first talked to [Z.G.] about this did you believe him?
A. Yes. I still believe him."

The Court of Appeals is correct in observing that had an objection been made at that time it in all probability would have been sustained. It is true, as stated in the Court of Appeals opinion, that this Court in *Stewart v. State* (1990), Ind., 555 N.E.2d 121 reversed a conviction where a psychologist was permitted to testify, over the defense objection, that another witness was trustworthy.

However, the case at bar presents a far different question. In *Stewart*, we had an expert who had examined the witness from a psychological point of view and then took the witness stand to tell the jury that in his expert opinion the witness was telling the truth. This, of course, is an intolerable invasion of the province of the jury.

In the case at bar, we had no such expert opinion being tendered. We have an 8-year-old child who represented to others, including his parents, that he had been molested by appellant. Obviously this information was transmitted to authorities and the case at bar resulted.

In a case of this type, it should be obvious to all concerned that a parent in fact would state that they believed their child. This statement was merely the expected utterance of a parent not as in *Stewart* where an uninvolved professional purported to vouch for the truthfulness of the witness. Although we concede that had defense counsel posed an objection at that time, the father would not have been permitted to answer the question, and had a motion to strike the answer been made, it would have been sustained. However, we cannot say that the effect of the answer remaining before the jury constituted such error as to require reversal. Judge Baker in a dissenting opinion in this case makes this point very well, and we agree with his observations.

■ It is necessary, however, for this case to be reversed for another reason. As its last witness, the State called William J. Alexander, who is a co-director and founder of the Indianapolis Institute, Incorporated, which in Mr. Alexander's words is a "family therapy program designed to deal with families in difficulty. We also have con-tracts from three counties in the State of Indiana to do sexual abuse treatment programs."

Evidence showed that appellant had been arrested and convicted in Hendricks County in 1988 of the offense of sexual battery, as a Class A misdemeanor. He was placed on probation for a term of one year and ordered to attend and complete the sexual offender treatment program through the Indianapolis Institute. Mr. Alexander was his counselor in that program for some 17 months. At trial he was permitted to testify to details related to him by appellant in the course of the psychological treatments. Not only was Mr. Alexander permitted to give the detail of appellant's communications to him, but he also was permitted to give his clinical observations of appellant, which included the observation that appellant did not respond well to the program and that he felt that appellant was "a regressive pedophile." As pointed out by the Court of Appeals in the case of *Daymude v. State* (1989), Ind.App., 540 N.E.2d 1263, this type of communication must be considered to be privileged.

In *Daymude*, the Court of Appeals observed that this was a question of first impression in Indiana, and in their opinion on rehearing stated:

"As part of Channon's treatment, the court-approved petition required that Daymude, his wife and Channon participate in family counseling. Further, the petition provided that if Daymude failed to follow the treatment program, the 'matter may be referred to the Department of Public Welfare or the Prosecutor for formal Court proceedings.' Thus, although the trial court technically did not order Daymude to participate in the counseling, Daymude did participate under the threat of court action. The issue set forth in our opinion correctly characterized the above facts. Accordingly, our decision remains the same."

We have held that the statutory physician-patient privilege must be strictly construed. *Matter of C.P.* (1990), Ind., 563 N.E.2d 1275. Further, we have held that the scope of the physician-patient privilege

is not to be extended by implication. *Id.* Alexander is not a physician nor was he assisting a physician. Thus the physician-patient privilege would not apply in this situation.

However, we hold that this communication should be protected. As is the case with the physician-patient relationship, the purpose of protecting such communications is to insure that persons communicate fully and completely with their counselors in order to promote successful treatment.

In the case at bar, appellant was compelled to seek treatment from Alexander. Appellant in all probability believed that those communications would be kept in confidence. Compliance with that court order dictated that appellant disclose potentially incriminating evidence. It is probable that non-compliance would have resulted in the court finding appellant in contempt of court or in violation of probation. Therefore, admission of Alexander's testimony amounted to a circumvention of appellant's Fifth Amendment rights. The purpose of the Fifth Amendment is to prevent compelled self-incrimination not to protect private information. *Eaton v. State* (1980), 274 Ind. 73, 408 N.E.2d 1281.

In *Estelle v. Smith* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), a capital case, the defendant, Smith, had been tried and convicted of murder. The jury recommended imposition of the death penalty. The United States Supreme Court granted *certiorari* and held *inter alia* that Smith's Fifth Amendment rights had been violated.

The trial court on its own ordered the defendant to undergo a psychiatric evaluation to determine competency to stand trial. During the penalty phase of the trial the State called the psychiatrist to the stand to testify regarding his evaluation of the defendant. This included testimony that there was no treatment which could modify or change defendant's behavior, and that the defendant would, if the opportunity existed, commit similar or the same criminal acts in the future. The psychiatrist's testimony was based exclusively upon the information he received from the defendant during the evaluation.

The U.S. Supreme Court stated that the State could not compel the defendant to testify without violating the defendant's Fifth Amendment rights, and that the attempt to use statements made to the psychiatrist without having been previously warned that the statements could be used against him later similarly violated the defendant's Fifth Amendment rights. *Id.* The Court went on to say that even though the statements were nontestimonial, the basis of the diagnosis was the communication between the psychiatrist and the defendant. *Id.* The psychiatrist's testimony included his prognosis regarding the defendant's propensity toward future criminal acts. The substance of the disclosures was used against the defendant.

Moreover, the Court wrote that the situation there was different from one in which the defendant raises an insanity defense, or makes a plea of not guilty by reason of insanity. The trial court had caused the evaluation to be conducted for a neutral purpose. The State then used the evaluation in a manner clearly adverse to the defendant.

We declined to apply the reasoning of. *Estelle* in *Dickson v. State* (1989), Ind., 533 N.E.2d 586, based upon the fact that Dickson had offered the defense of insanity; therefore, there was no Fifth Amendment violation.

The situation in the present case is analogous to the situation in *Estelle.* Here, the defendant was convicted of child molestation and ordered by the sentencing court to undergo counselling sessions with Alexander. The purpose of the counselling at that point was for treatment. The State then used Alexander's prognosis in a manner adverse to appellant. The prognosis was based upon the communications between Alexander and appellant. Appellant's Fifth Amendment rights were violated by admission of that testimony.

Further support of the argument that this kind of testimony should not be admitted is the fact that the legislature recently enacted Ind.Code § 25–23.6–6–1 which states that communications between a social worker or a clinical social worker and a

client are privileged communications. Although this statute was not in effect at the time of appellant's trial it supports the argument that communications which are made in the course of this type of relationship should be protected.

Because of the error engendered by the testimony of Mr. Alexander, this case is reversed and remanded for a new trial.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

SHEPARD, C.J., concurs on the basis of ineffective assistance.