Laura Beth BLEVINS, and Scott Blevins, Natural Parents of Lauren Blevins, Deceased, Appellants–Plaintiffs,

v.

Carol A. CLARK, M.D., Appellee– Defendant.

No. 48A05–0004–CV–142.

Court of Appeals of Indiana.

Dec. 19, 2000.

1236

Marshall S. Hanley, Jennifer Stephens Love, Findling Garau Germano & Pennington, P.C., Indianapolis, Indiana, Attorneys for Appellants.

Robert G. Zeigler, Marilyn A. Young, Zeigler Cohen & Koch, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Laura Beth Blevins and Scott Blevins (collectively, the Blevinses) appeal the judgment in favor of appellee-defendant Carol A. Clark, M.D., on their medical malpractice claim. They contend that the trial court erred when it 1) admitted evidence of Dr. Clark's professional reputation and testimony of nurses who were instructed not to speak to their counsel, 2) denied their motion for exclusion of evidence obtained by alleged improper witness interviews and sanctions against Dr. Clark's counsel for such interviews, and 3) instructed the jury about the applicable standard of care.

### FACTS

The facts most favorable to the judgment indicate that in July 1994 Laura Beth became a patient of Dr. Clark for prenatal care. Laura Beth had already given birth by Caesarean section to one child, delivered by a different doctor, several years earlier. During her prenatal visit, Dr. Clark discussed with Laura Beth the possibility of a VBAC (vaginal birth after Caesarean section) and the risk of uterine rupture. Laura Beth wanted a VBAC and did not change her mind about wanting a VBAC at subsequent prenatal visits.

Almost a week after Laura Beth's due date, she was admitted to the Community Hospital of Anderson for her labor to be induced. Laura Beth still wanted a VBAC. Later in the afternoon, her cervix began to thin and the baby began to move down the birth canal. Dr. Clark testified that Laura Beth did not demand a Caesarean section and seemed to be experiencing normal birth pains. The Blevinses, on the contrary, contend that Laura Beth demanded a Caesarean section, which Dr. Clark refused to administer.

During the evening, Dr. Clark performed a vaginal exam and ascertained that the baby's arm was over the baby's head. A subsequent vaginal exam indicated that an emergency Caesarean section was required. During the emergency delivery, Dr. Clark discovered that Laura Beth's uterus had ruptured at the point of her prior Caesarean-section scar and that the baby had entered Laura Beth's abdomen. Record at 1486. Lauren, the newborn daughter of the Blevinses, was quickly transferred to Riley Hospital in Indianapolis where she died a few days later.

Pursuant to Indiana law, the Blevinses filed a complaint with the Indiana Department of Insurance for an opinion by the medical review panel. The panel concluded that Dr. Clark had failed to meet the standard of care and that her negligence was a factor causing Lauren's death. On September 24, 1997, the Blevinses initiated suit against Dr. Clark.

During the pre-trial phase, Dr. Clark submitted a witness list, identifying three nurses who had treated Laura Beth during her labor and delivery: Judith Dobbins, Heather Hammond, and D. Brokaw. Counsel for the Blevinses attempted to speak with these nurses but was told by the nurses themselves that Dr. Clark's counsel and their nursing supervisor had instructed them not to discuss Laura Beth's treatment with anyone other than Dr. Clark's counsel. Because counsel for the Blevinses was unable to speak with

these witnesses, the Blevinses filed a motion requesting sanctions against Dr. Clark's counsel and exclusion of the nurses' testimony. The trial court denied their motion.

At trial, Nurse Dobbins was questioned on direct examination about Dr. Clark's reputation at Community Hospital of Anderson and her reputation as an obstetrician-gynecologist. The Blevinses objected to Dobbins's testimony, claiming that Dr. Clark's "character reputation" was not an issue. The court ruled that evidence of Dr. Clark's professional reputation was admissible. Thus over objection, Nurse Dobbins testified, "[Dr. Clark is] very highly respected at Community Hospital. She's very competent, a very compassionate individual, always very calm." R. at 1141. The Blevinses then objected that Nurse Dobbins's answer went "beyond any professional reputation." R. at 1141. The court agreed that the answer went "beyond the question." R. at 1142. Having been asked to confine her answer to Dr. Clark's professional reputation, Nurse Dobbins testified, "I think [Dr. Clark]'s regarded highly by the nursing staff." R. at 1142.

At the close of trial, the trial court instructed the jury to evaluate Dr. Clark's conduct based on the standard of care as it existed in February 1995, when the events giving rise to the suit took place. Moreover, if the standard of care had become more rigorous since February 1995, the jury was instructed to disregard the heightened standard. The trial court also instructed the jury that it was inappropriate to evaluate Dr. Clark's care using hindsight. After deliberations, the jury entered a verdict in favor of Dr. Clark. The Blevinses now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Initially, we note that reviewing courts accord great deference to the trial court's evidentiary rulings. *Ledbetter v. Ball Memorial Hosp.*, 724 N.E.2d 1113,

1117 (Ind.Ct.App.2000), *trans. denied.* We review evidentiary rulings for abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances set before it. *Ind. Univ. Med. Ctr. v. Logan*, 728 N.E.2d 855, 859 (Ind.2000).

### II. The Blevinses' Claims

#### A. Evidence of Dr. Clark's Character

■ The Blevinses first contend that the trial court improperly admitted testimony about Dr. Clark's professional reputation. More specifically, they maintain that Ind. Evidence Rule 404(a) prohibits the admission of character evidence in medical malpractice suits where character or reputation is not an issue.

Rule 404(a) provides:

(a) **Character Evidence Generally**. Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

Evid.R. 404(a) (emphasis in original).

The first exception to the general rule of character-evidence exclusion, employing the term "accused," appears to be limited to defendants in criminal cases. 12 Robert L. Miller, Jr., *Indiana Practice: Indiana*

*Evidence* 345 (2d ed. 1995). However, the Seventh Circuit Court of Appeals, construing Rule 404(a)'s federal analogue, has recognized that Rule 404(a)'s exceptions may apply in *civil* cases where the central issue is criminal in nature. *Palmquist v. Selvik,* 111 F.3d 1332, 1340 (7th Cir.1997) (observing that "the civil defendant may invoke the exception ... in an excessive force case such as this"). Though the Blevinses moved to amend their complaint by adding a battery count, R. at 292–93, the trial court denied that motion. The suit remained a medical malpractice action sounding in negligence, with no central issue criminal in nature. As a result, even if we were to announce that Rule 404(a)(1) applied to civil suits with a central issue criminal in nature, Dr. Clark could not take advantage of the exception under these circumstances.

■ While we conclude that Nurse Dobbins should not have been permitted to testify about Dr. Clark's professional reputation, the error was harmless. Ind. Trial Rule 61 provides in part, "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." The Blevinses have not shown that Nurse Dobbins's testimony affected their substantial rights and, therefore, may not invoke reversal on this ground.

### B. Ex Parte *Witness Contacts*

#### 1. *Exclusion of Testimony*

■ The Blevinses next argue that the trial court improperly denied their motion to exclude testimony from other nurses because of alleged improper *ex parte* attorney interviews. More specifically, they argue that Dr. Clark's counsel interviewed nurses covered by a physician-patient privilege.

Relying on *Cua v. Morrison,* 636 N.E.2d 1248 (Ind.1994) (adopting *Cua v. Morrison,* 626 N.E.2d 581 (Ind.Ct.App.1993)), the Blevinses argue that Dr. Clark's attorney improperly conducted *ex parte* interviews with nurses who attended Laura Beth during her delivery. "Ex parte interviews with a party-patient's health care providers by opponent's counsel compromises the physician-patient privilege." *Cua,* 626 N.E.2d at 582. To decide whether *Cua* is applicable here, we must first determine whether the nurses who attended Laura Beth during her pregnancy were covered by the privilege.

■ The physician-patient privilege did not exist at common law but was first conferred by Indiana statute in 1852. *In the Matter of C.P.,* 563 N.E.2d 1275, 1277 (Ind.1990). Because the physician-patient privilege is in derogation of the common law and impedes the search for truth, it is to be strictly construed. *Id.* The current version of the statute[1] states that physicians "shall not be required to testify ... as to matters communicated to them by patients, in the course of their professional business, or advice given in such cases." IND.CODE § 34–46–3–1(2). The word "physician" denotes one who " 'has received the degree of doctor of medicine from an incorporated institution and 'lawfully' engaged in the practice of medicine.' " *In the Matter of C.P.,* 563 N.E.2d at 1277 (quoting *William Laurie Co. v. McCullough,* 174 Ind. 477, 488, 90 N.E. 1014, 1018 (1910)). Our supreme court has extended this privilege to third persons who aid physicians or transmit information to physicians on behalf of patients. *Springer v. Byram,* 137 Ind. 15, 22, 36 N.E. 361, 363 (1894); *see, e.g., In the Matter of C.P.,* 563 N.E.2d at 1276 (holding that counselor who aids a psychiatrist may be covered by the privilege); *Shultz v. State,* 417 N.E.2d 1127, 1134 (Ind.Ct.App.1981) (holding that laboratory technician who draws blood un-

---

1. Chapter 3 of the statute is titled: "Privileges of Attorneys, Physicians, Clergymen, and Spouses."

der the supervision of an attending physician is covered by the privilege).

■ To determine whether a non-physician health care provider is covered by extension of the privilege, we must examine "[t]he nature and degree of control exercised" by the physician over the health care provider under the circumstances of the dispute. *In the Matter of C.P.*, 563 N.E.2d at 1278. Put differently, when a health care provider does not work under the close supervision of a physician, the patient may not assume that the health care provider is covered by the privilege. *Darnell v. State*, 674 N.E.2d 19, 22 (Ind. Ct.App.1996). In *Darnell*, we noted, "Although ... all nurses work under the general supervision of a physician, a closer degree of supervision or control by the physician must exist in order for the physician-patient privilege to be applicable." *Id.* (holding that criminal defendant's statement to an emergency room nurse was not subject to the privilege because the nurse was not a physician and not under the supervision of a physician).

Here, the Blevinses have not shown that the Dr. Clark's degree of control or supervision over the nurses requires application of the privilege. The nurses exercised a certain degree of independence in assessing and monitoring Laura Beth's condition, given Dr. Clark's periodic absences throughout the day of delivery. R. at 1009, 1164. As a result, we cannot say that the trial court abused its discretion in denying the motion to exclude the nurses' testimony.

### 2. Attorney Sanctions

■ The Blevinses further argue that the trial court improperly denied their motion for sanctions against Dr. Clark's counsel who instructed the nurses not to talk to counsel for the Blevinses.

■ T.R. 26(C) provides a non-exclusive list of tools that a trial court may employ to remedy an abuse of discovery. As we have observed, "When ... the court determines that the discovery process has been abused, the court may, in its discretion, impose various sanctions, including ... an award of damages." *Watters v. Dinn*, 633 N.E.2d 280, 289 (Ind.Ct.App. 1994).

The Blevinses claim their "counsel was unable to discover information that was relevant and important" to the trial because the nurses had been instructed not to speak to anyone other than Dr. Clark's attorney about the case. Appellant's brief at 18. However, they could have requested that the nurses give a deposition. In light of this failure, the Blevinses cannot show that opposing counsel's conduct "had an extremely prejudicial effect" on their case warranting sanctions. Appellant's brief at 18. As a result, they have not shown an abuse of discretion by the trial court.

### C. Jury Instruction

■ The Blevinses final claim of error involves an instruction requesting that the jury evaluate Dr. Clark's care according to the standard of care used in February 1995. They claim that the instruction encouraged the jury to adopt its own standard of care and that it was repetitive, confusing, and unsupported by the evidence.

■ When reviewing the propriety of jury instructions, we use an abuse of discretion standard. *Indianapolis Athletic Club, Inc. v. Alco Standard Corp.*, 709 N.E.2d 1070, 1072 (Ind.Ct.App.1999), *trans. denied.* The manner of instructing a jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless the instructional error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Fricke v. Gray*, 705 N.E.2d 1027, 1031 (Ind.Ct.App.1999), *trans. denied.* An instruction will be upheld if any evidence supports it. *Homehealth, Inc. v. Northern Ind. Pub. Serv. Co.*, 600 N.E.2d 970, 975 (Ind.Ct.App. 1992).

The trial court instructed the jury as follows:

You are to evaluate Dr. Clark's conduct based on the standard of care that existed at the time of the events, in February of 1995. If the standard of care has become higher or more rigorous since that time, such higher or more rigorous standards of care are not to be used to evaluate Dr. Clark's conduct. Similarly, you are to evaluate the care rendered in this case solely based upon the conditions known or that should have been known to Dr. Clark at the time, and not on the basis of hindsight.

R. at 240.

In *Vergara v. Doan,* our supreme court reformulated the standard of care in medical malpractice cases, abandoning the "modified locality rule." 593 N.E.2d 185, 187 (Ind.1992). Formerly, the standard of care was "that degree of care, skill, and proficiency which is commonly exercised by ordinary careful, skillful, and prudent [physicians], at the time of the operation and in similar localities." *Burke v. Capello,* 520 N.E.2d 439, 441 (Ind.1988), *abandoned by Vergara,* 593 N.E.2d at 186, 187. Under the new standard, a physician must exercise "that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Vergara,* 593 N.E.2d at 187. Our supreme court regarded the new formulation "as a relatively modest alteration of existing law." *Id.* at 188. We find nothing in *Vergara,* or in subsequent medical malpractice cases, that prohibits the jury from using the standard applicable at the time of the alleged malpractice. Only the requirement that the witness testify to the standard of a particular *locality* has changed.

It follows that the first sentence of the instruction is correct inasmuch as it requests the jury to apply the standard applicable at the time of the delivery. In addition, during trial, one doctor testified

that the current standard of care involving VBAC procedures was more stringent than the standard in 1995. R. at 1370. Hence, the instruction's second sentence was supported by the evidence and reflected the applicable law. We fail to see how the instruction is unduly repetitive, confusing, or that it invites the jury to adopt its own standard of care. In sum, the trial court did not abuse its discretion in giving the instruction.

## CONCLUSION

In conclusion, we determine that 1) the trial court's admission of evidence regarding Dr. Clark's reputation was harmless error; 2) the trial court did not abuse its discretion in denying the motion for sanctions and exclusion of testimony; and 3) the instruction regarding the applicable standard of care was proper.

Judgment affirmed.

BROOK, J., and BARNES, J., concur.