[Cite as *State v. Foxx*, 2014-Ohio-235.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

|                          |   |                                  |
|--------------------------|---|----------------------------------|
| STATE OF OHIO            | : |                                  |
|                          | : | Appellate Case No. 2013-CA-14    |
| Plaintiff-Appellee       | : |                                  |
|                          | : | Trial Court Case No. 2012-CR-331 |
| v.                       | : |                                  |
|                          | : |                                  |
| CHRISTOPHER M. FOXX      | : | (Criminal Appeal from            |
|                          | : |  Common Pleas Court)             |
| Defendant-Appellant      | : |                                  |
|                          | : |                                  |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of January, 2014.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Post Office Box 341021, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Christopher M. Foxx appeals from his conviction and sentence for Aggravated Robbery and Kidnapping, both with a three-year firearm specification. Foxx contends that the trial court erred by overruling his motion to suppress evidence obtained

from a vehicle in which he was a passenger. He argues that there was no proper basis for stopping the vehicle, removing him from it, patting him down for weapons,[1] or arresting him.

{¶ 2}     We conclude that the stop of the vehicle in which Foxx was a passenger was based on reasonable, articulable suspicion that an occupant of the vehicle had been involved in the commission of an armed robbery just minutes before the stop. A passenger may be removed from a vehicle that has been lawfully stopped. *Maryland v. Wilson*, 519 U.S. 408, 137 L.Ed.2d 41, 117 S.Ct. 882 (1997). Clothing found in the vehicle in plain view by another officer not more than two minutes after the stop matched the description of the clothing worn by the perpetrator, which gave the officer probable cause to arrest Foxx for Aggravated Robbery. We conclude, therefore, that the seizure of the clothing was lawful, so that the trial court did not err in overruling the motion to suppress that evidence.

{¶ 3}     Foxx also contends that the trial court erred by assessing court costs against him without first advising him that he might have to perform community service if he failed to pay those costs. We agree. Consequently, that part of the judgment of the trial court assessing court costs against Foxx is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded to the trial court for the proper disposition of court costs.

## I. Police Officer Hartwell Responds to a Reported Armed Robbery, and Encounters Foxx Nearby Minutes Later

{¶ 4}     The trial court made the following findings of fact:

---

[1] The weapons pat-down issue is essentially a red herring. Nothing of any significance was found on Foxx's person during the pat-down.

On July 3, 2012 in the early morning hours [1:40 a.m.] Fairborn Police received a dispatch from the Speedway gas station located at Dayton-Yellow Springs Road and Trebein Road. Dispatch advised the store had just been robbed by a single individual wearing a black hood [hooded sweatshirt], black bandana, and blue jeans, that the person had a firearm in his hand and fled north behind the station towards Channing Way. Units of the Fairborn Police Department responded including Officer [Michael J.] Hartwell. As Officer Hartwell approached the area, he was driving in a manner to intercept the getaway direction that the perpetrator may have been taking. Knowing that one route to flee would be to go Channing Way to Commerce Centre and then go north on Commerce Centre to Garland Avenue extension, the officer drove south on Trebein and turned right on Garland heading in that general direction. As the officer came to the intersection of Garland and Commerce he saw two vehicles. The lead vehicle was a cab which he observed and which proceeded past the officer. The second vehicle was a silver vehicle in which he observed two individuals. He made this observation just a matter of minutes after the call of the robbery. [Hartwell testified that he saw the silver vehicle three to four minutes after the dispatch.] The car he observed was on one of the possible escape routes that could have been taken by the perpetrator of the robbery. As he observed the silver vehicle he noted the passenger's seat was pulled back making it difficult to see the body of the passenger above the window line. At this time the officer decided to fall in behind the vehicle. The officer followed the vehicle noting that its speed was very slow. The speed limit was 45 miles per hour and he testified this vehicle

was traveling 28 to 30 miles per hour while he was following. During this time he also ran the registration of the vehicle which came back to Arlin Place, a location in the south part of Fairborn. He also noted that the direction the vehicle was traveling was not in that direction. The officer noted that the location where he fell in behind the vehicle was approximately one-half mile to three quarters mile [sic] from the location of the alleged robbery. As the officer followed he observed the vehicle turn right onto Sanctuary Drive. This street is not an outlet. The car traveled approximately one-half mile down Sanctuary and, arriving in the 700 block area, moved from the traveled portion of the highway over to the right and came to a complete stop along the right side curb. The officer did not observe any form of signal either by the signal light or hand signifying the move from the traveled direction of the vehicle [sic] to the side of the road where the car came to a stop. The officer pulled up behind the vehicle and turned on a white light [spotlight] but did not illuminate his overhead lights on his marked cruiser. At this time the officer called for backup units who arrived in one to two minutes.

After back up [sic] arrived, two police officers approached the vehicle with Officer Hartwell approaching the passenger side. The individuals inside the car were ordered to put their hands up where they could be seen and [Foxx] who was the passenger in the vehicle was asked to step outside the car. Once [Foxx] stepped outside the car he was patted down which the officer testified he did because the report in the robbery was that the person was armed with a firearm and that as a precaution he conducted the pat down. The officer specifically

observed that when [Foxx] exited the vehicle he was wearing clothing that was not of the type described by dispatch as being worn by the individual who committed the robbery. The officer also observed that [Foxx] did not have any shoes on and that he was sweating profusely. [Foxx] was cuffed and detained by placing him in the back of the police cruiser. After walking back to the vehicle Officer Hartwell was advised by Sgt. Maeder that Sgt. Maeder had observed in plain view in the back of the vehicle the clothing which was identical in appearance to the description of the clothing of the perpetrator of the robbery. In the meantime, the driver was engaged by another officer regarding the traffic violation.

The officers became aware that the driver was under [a driver's license] suspension. Pursuant to the Fairborn Police Department's tow policy, the officers had the car towed. Prior to the towing officers conducted an inventory search of the vehicle. Subsequently [Foxx] was placed under arrest and taken to the Fairborn Police Department where he was interviewed by Detective Foreman.

{¶ 5} There is evidence in the record to support the trial court's findings. To these findings we would add that Hartwell testified that the taxicab, the silver vehicle, and their occupants were the only persons encountered, on foot or in a vehicle, during the response to the reported robbery. Hartwell also testified that there were only two escape routes from the area into which the perpetrator reportedly fled on foot, that he was covering one of them, and that another officer was covering the other. The driver of the vehicle was Andrea Abram. When her information was run, Hartwell determined that she did not have a valid driver's license, for which

she was cited, in addition to the failure to signal. Before the search of the vehicle incident to its being towed, Abram and Foxx were both arrested, based on the discovery of the clothing "as well as some admissions by Ms. Abram to Sergeant Mader [sic] * * * to the affect [sic] that they were in the area and he had been at the store."

## II.   The Course of Proceedings

{¶ 6}   Foxx was charged by indictment with Aggravated Robbery, in violation of R.C. 2911.01(A)(1), a felony of the first degree, and with Kidnapping, in violation of R.C. 2905.01(A)(2), a felony of the first degree, both with three-year firearm specifications. Foxx moved to suppress evidence, contending that it had been obtained as the result of an unlawful search and seizure, and statements he made to police.

{¶ 7}   Following a hearing, Foxx's motion to suppress was overruled, the court holding specifically that "any evidence obtained from the vehicle and statements made by [Foxx] will be allowed in any further criminal proceedings." Foxx raises no issues concerning the trial court's overruling his motion to suppress statements. No evidence was identified at the suppression hearing as having been obtained from the vehicle besides the clothing found in plain view. Conversely, no testimony was elicited that the clothing was the only evidence obtained from the vehicle.

{¶ 8}   Following the overruling of his motion to suppress, Foxx pled no contest to both counts and specifications. The offenses were merged, with the State electing to proceed to sentencing on the Aggravated Robbery conviction. The firearm specifications were also merged. Foxx was sentenced to imprisonment for four years for Aggravated Robbery, and to three years

on the firearm specification, to be served prior to, and consecutively to, the four-year sentence, for a total sentence of seven years.

{¶ 9}   The trial court assessed court costs against Foxx, but did not tell him, at the sentencing hearing, that he could be ordered to perform community service if he did not pay the court costs.   The sentencing entry, however, does state that Foxx may be required to perform community service if he does not pay the court costs.

{¶ 10}   From his conviction and sentence, Foxx appeals.

### III.   The Stop and Removal of Foxx from the Vehicle, which Led to the Discovery in Plain View of the Clothing Worn by the Perpetrator, Were Supported by Reasonable, Articulable Suspicion; the Arrest, which Led to the Search of the Vehicle, Was Supported by Probable Cause

{¶ 11}   Foxx's First Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS.

{¶ 12}   In support of this assignment of error, Foxx first argues that Officer Hartwell lacked the necessary reasonable, articulable suspicion to stop the vehicle in which Foxx was a passenger.   We disagree.

{¶ 13}   Although the issue is close, we conclude that Hartwell had a reasonable, articulable suspicion that an occupant of the vehicle was involved in the armed robbery at the Speedway store.   The robbery had been reported within three to four minutes of Hartwell's observation of the vehicle, it was on one of the two escape routes from where the perpetrator had

fled from the scene, and no other persons, whether on foot or in a vehicle, had been encountered in that short time, other than a taxicab, at about 1:40 in the morning. Although these facts do not amount to probable cause for an arrest or a search, we conclude that they are sufficient to support a brief, investigative stop.

{¶ 14} In view of this conclusion, we find it unnecessary to address the State's alternative argument that Hartwell was justified in stopping the vehicle for a traffic violation.

{¶ 15} Foxx next argues that Hartwell was not justified in removing him from the vehicle, patting him down, and placing him in the rear of the cruiser. When a vehicle is properly stopped, a police officer may require a passenger to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 137 L.Ed.2d 41, 117 S.Ct. 882 (1997).

{¶ 16} Because the robbery Hartwell was investigating, concerning which he had a reasonable, articulable suspicion of involvement by an occupant of the vehicle, had involved the use of a weapon, he was justified in patting Foxx down for weapons, for Hartwell's safety. But even if he was not justified in patting Foxx down, that act did not result in the discovery or seizure of any evidence; therefore, the pat-down cannot be a basis upon which to exclude evidence.

{¶ 17} Similarly, the placement of Foxx in the back seat of Hartwell's cruiser did not result in the discovery or seizure of any evidence. Regardless of where Foxx was while Hartwell was conducting his brief investigative stop and sorting out Abram's citation, the other officer on the scene was going to discover the clothing in plain view in the vehicle, which matched the description of the clothing worn by the perpetrator. And asking a driver or occupant of a vehicle to sit in the officer's cruiser to facilitate a traffic stop is not itself illegal. *See State v. Lozada*, 92

Ohio St.3d 74, 76, 2001-Ohio-149, 784 N.E.2d 520.

{¶ 18} Foxx next contends that he was arrested without probable cause. To support this contention, he argues that he was arrested when he was put, handcuffed, in the back seat of Hartwell's cruiser. Hartwell testified that Foxx was not arrested until after the incriminating clothing was found in the vehicle in which Foxx was an occupant. Whether a seizure constitutes an arrest depends upon whether a reasonable person in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associates with formal arrest. *State v. Hatch*, 2d Dist. Montgomery No. 18986, 2002-Ohio-55, 2002 WL 10449, *4, citing *United States v. Carral-Franco*, 848 F.2d 536 (5th Cir.1988).

{¶ 19} We find it unnecessary to determine, in this case, whether Foxx was arrested when he was put in the back seat of Hartwell's cruiser, or whether, as Hartwell testified, Foxx was not arrested until the discovery of the incriminating clothing. If Foxx was prematurely arrested, without probable cause, that did not lead to the discovery of any evidence to suppress. The discovery of the clothing, in plain view, occurred during the brief investigatory stop, not more than two minutes after Hartwell ordered Foxx out of the vehicle. After the incriminating clothing was discovered, there was probable cause for Foxx's arrest, as well as Abram's, which justified the tow of the vehicle and the search of the vehicle incident to the tow.

{¶ 20} We conclude, therefore, that none of the evidence obtained from the vehicle in which Foxx was a passenger, and none of Foxx's subsequent statements,[2] are subject to

---

[2] Foxx only argues that his statements are the fruit of an unlawful arrest. He does not dispute that proper *Miranda* warnings preceded his statements.

exclusion. Therefore, Foxx's First Assignment of Error is overruled.

### IV. The Trial Court Erred when it Failed to Inform Foxx that
### If He Did Not Pay the Costs Assessed Against him,
### He Could Be Required to Perform Community Service

{¶ 21} Foxx's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO NOTIFY THE DEFENDANT AT SENTENCING THAT HE MAY BE ORDERED TO DO COMMUNITY SERVICE TO PAY OFF HIS COURT COSTS.

{¶ 22} When Foxx was sentenced, R.C. 2947.23(A)(1)(a) required a judge imposing any criminal sentence, "at the time the judge * * * imposes sentence," to notify the defendant that upon the defendant's failure to pay costs, the trial court may order the defendant to perform community service. Effective March 22, 2013, subsequently to Foxx's sentencing hearing, this statute was amended to require the notification only where community control sanctions or other nonresidential sanctions are imposed. Although the judgment entry in this case includes a provision incorporating notification of the possibility that Foxx may be required to perform community service if he fails to pay the costs assessed against him, he was not notified of this possibility at the sentencing hearing.

{¶ 23} The State contends that the notification contained in the judgment entry is sufficient. We agree with the Eleventh District Court of Appeals that the failure to notify a defendant at a sentencing hearing of the possibility that community service may be ordered is reversible error notwithstanding that the judgment entry includes that notification. *State v.*

*Gates*, 11th Dist. Portage No. 2011-P-0001, 2013-Ohio-4284, ¶ 3. The requirement that the defendant be notified of this possibility at the sentencing hearing ensures that the defendant is made aware of that possibility, at a time when the defendant can still ask the trial court to waive costs.

{¶ 24} We respectfully disagree with our sister court as to the appropriate remedy. In *Gates*, the court of appeals ordered the trial court to remove that part of the judgment entry providing for the possibility of court-ordered community service. We have instead reversed the part of the judgment assessing costs, and remanded the case to the trial court for the limited purpose of properly assessing costs at a new sentencing hearing. *State v. Jeffery*, 2013-Ohio-504, 986 N.E.2d 1093, ¶ 44-45 (2d Dist.). In *State v. Henderson*, 2d Dist. Montgomery No. 24701, 2012-Ohio-3283, ¶ 13, we did order the provision for the possibility of court-ordered community service removed from the judgment entry, but that was because the State had suggested that remedy, "indicating that it would be satisfied with this solution."

{¶ 25} In the case before us, the State proposes no remedy at all, believing this assignment of error to be without merit. Foxx, correctly in our view, seeks the remedy of remand for appropriate notification.

{¶ 26} Foxx's Second Assignment of Error is sustained.


## V. Conclusion

{¶ 27} Foxx's First Assignment of Error having been overruled, and his Second Assignment of Error having been sustained, that part of the judgment entry assessing costs against Foxx is Reversed, the judgment of the trial court is Affirmed in all other respects, and this

cause is Remanded for a proper assessment of court costs.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Robert Alan Brenner
Hon. Stephen Wolaver