INDIANA DEPARTMENT OF TRANS-
PORTATION and State of Indiana,
Appellants–Defendants,

v.

Robert HOWARD and Lynn Howard, In-
dividually and as Co–Administrators
of the Estate of Amber L. Howard, E
& B Paving, Inc. d/b/a Cedar Crest
Enterprises d/b/a Mohr Construction
Company, United Rentals (North
America), Inc., d/b/a United Rentals
Highway Technologies, Inc., d/b/a
United United Rentals Norwest, Inc.,
d/b/a United Rentals, Inc., and Calvin
Napier, Appellees–Plaintiffs.

No. 46A05–0701–CV–36.

Court of Appeals of Indiana.

Jan. 28, 2008.

Robert J. Palmer, D. Andrew Spalding, May Oberfell Lorber, Mishawaka, IN, Attorneys for Appellants.

Bruce P. Clark, Stacy J. Vasilak, Bruce P. Clark & Associates, Munster, IN, Attorneys for Appellees.

## OPINION ON REHEARING

ROBB, Judge.

### Case Summary and Issue

Robert and Lynn Howard, individually and as co-administrators of the Estate of Amber Howard, filed a lawsuit against, among others, the Indiana Department of Transportation, the State of Indiana, and E & B Paving, Inc., for damages resulting from a single-car accident in which Amber sustained fatal injuries. The trial court granted the Howards' and E & B Paving's motions to correct error, vacating a previously-issued summary judgment in favor of the Indiana Department of Transportation and the State of Indiana (collectively referred to as "INDOT"). We dismissed INDOT's appeal of the trial court's ruling on the motions to correct error for lack of subject matter jurisdiction. *See Ind. Dep't*

*of Transp. v. Howard,* 873 N.E.2d 72 (Ind. Ct.App.2007). INDOT then filed a petition for rehearing in which it clearly states the basis on which it invokes this court's jurisdiction.[1] We grant the petition for rehearing, vacate our earlier decision, and consider the merits of the issue raised by INDOT's appeal: whether the trial court properly set aside its prior entry of summary judgment. Concluding that the trial court did not abuse its discretion in granting the motions to correct error because a genuine issue of material fact kept INDOT from being entitled to summary judgment, we affirm.

### Facts and Procedural History

E & B Paving bid on and was awarded from INDOT a job resurfacing and paving the road shoulder on State Road 8 in LaPorte County, Indiana. Paving work began on or around November 4, 2002. On November 13, 2002, INDOT area supervisor Ross Andrews was at the construction site and noted the need for more warning barrels along the side of the road and replacement of tape used for temporary road markings in the construction area. *See* Appellant's App. at 96. Andrews's concerns were conveyed to E & B Paving and to INDOT's project supervisor. More barrels were ordered and the tape was to be replaced by the end of the day. *See id.* The temporary tape had been coming off the road for several days prior to November 13. *See id.* at 98, 100.

At approximately 7:30 p.m. on November 13, Amber Howard was driving westbound on State Road 8 approaching the construction area. Amber's vehicle went off the road and crashed, and Amber died as a result of her injuries. Captain Scott Bell of the LaPorte County Sheriff's Department, inspected the accident site on

---

**1.** Neither the Howards nor E & B Paving have filed a response to the petition for re-    hearing.

the night of the accident, and testified as follows:

> [A]s I was approaching [the accident site], I could see the flashing lights of the fire truck and the police cars, and it was just so incredibly dark. You know, I'm quite familiar with the area, having driven the roads for the amount of time that I have. And once I got past the section of road that had the orange and white barrels alongside of it, it was like, you know, I had to slow down because I couldn't see the road, I couldn't see the berms, I couldn't see anything because there were no markings on the roadway at all at that point, and there was nothing on the edge of the road such as a cone or a barrel that would mark the side of the road.

*Id.* at 103.

Amber's parents, Robert and Lynn Howard, individually and as co-administrators of Amber's estate, filed a complaint against, *inter alia*, INDOT and E & B Paving. On June 6, 2006, INDOT filed a motion for summary judgment, alleging it was entitled to judgment as a matter of law because it was not responsible for the negligence of E & B Paving, an independent contractor. Both the Howards and E & B Paving filed responses to the motion for summary judgment. On August 23, 2006, the trial court granted INDOT's motion for summary judgment. INDOT then requested that the trial court find there was no just reason for delay and direct entry of final judgment as to less than all parties. The trial court granted INDOT's request on September 8, 2006, making the entry of summary judgment for INDOT a final appealable order.

Both the Howards and E & B Paving filed Trial Rule 59 motions to correct error with regard to the entry of summary judgment. INDOT responded to both motions. The trial court held a hearing on the motions and INDOT's response, and on December 19, 2006, entered the following order granting the relief the Howards and E & B Paving sought:

> This matter came before the Court on November 28, 2006, on Defendant E & B Paving, Inc's Motion to Correct Errors and [the Howards'] Motion to Alter or Amend Judgment, both filed pursuant to Trial Rule 59. The Court having heard the arguments of counsel and reviewed the filings in support and against said Motions, now Grants said Motions.
>
> IT IS THEREFORE ORDERED that this Court's Order granting IN-DOT's Motion for Summary Judgment and entering Final Judgment As to Less Than All Parties is hereby set aside.
>
> IT IS THEREFORE ORDERED that INDOT's Motion for Summary Judgment is Denied.
>
> IT IS FURTHER ORDERED that this matter will proceed to trial by jury on the dates and times heretofore Ordered.

Appellants' Appendix at 12. INDOT filed its Notice of Appeal on January 5, 2007. Pursuant to Trial Rule 59(F), "[a]ny modification or setting aside of a final judgment or an appealable final order following the filing of a Motion to Correct Error shall be an appealable final judgment or order."

*Discussion and Decision*

I. Standard of Review

The standard for reviewing trial court rulings on motions to correct error is abuse of discretion. *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind.2003). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it or if the trial court misapplied the law. *Walker v. Kelley*, 819 N.E.2d 832, 836 (Ind.Ct.App.2004). By granting the motions to correct error, the trial court set aside summary judgment in

favor of INDOT. Thus, in determining whether the trial court abused its discretion in granting the motions to correct error, we must also determine whether INDOT was entitled to summary judgment.

Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in the favor of the nonmovant. *Drees Co., Inc. v. Thompson,* 868 N.E.2d 32, 38 (Ind.Ct.App. 2007), *trans. denied.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

## II. INDOT's Liability

We begin from the premise that summary judgment is rarely appropriate in negligence cases because they are particularly fact sensitive and are governed by the objective reasonable person standard—one best applied by a jury after hearing all of the evidence. *Schoop's Rest. v. Hardy,* 863 N.E.2d 451, 454 (Ind.Ct. App.2007). Generally, the existence of a legal duty owed by one party to another in a negligence action is a pure question of law and may be appropriate for disposition by summary judgment. *Hammock v. Red Gold, Inc.,* 784 N.E.2d 495, 498 (Ind.Ct. App.2003), *trans. denied.* However, factual questions may be interwoven, rendering the existence of a duty a mixed question of law and fact to be determined by the factfinder. *Id.*

The tort of negligence is composed of three elements: "(1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the [plaintiff]; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Gilpin v. Ivy Tech State Coll.,* 864 N.E.2d 399, 401 (Ind.Ct. App.2007) (quoting *McCormick v. State,*

673 N.E.2d 829, 837 (Ind.Ct.App.1996)). To prevail on a motion for summary judgment in a negligence case, the defendant must establish that the undisputed material facts negate at least one element of the plaintiff's claim or that the claim is barred by an affirmative defense. *Precedent Partners I, L.P. v. Hulen,* 863 N.E.2d 328, 331 (Ind.Ct.App.2007).

In general, a principal is not liable for the negligence of an independent contractor unless one of the following five exceptions applies: 1) where the contract requires the performance of intrinsically dangerous work; 2) where the principal is by law or contract charged with performing the specific duty; 3) where the act will create a nuisance; 4) where the act to be performed will probably cause injury to others unless due precaution is taken; and 5) where the act to be performed is illegal. *Helms v. Carmel High Sch. Vocational Bldg. Trades Corp.,* 854 N.E.2d 345, 346 (Ind.2006). These are the only bases for establishing a duty of care by a principal who acts through an independent contractor. *Becker v. Kreilein,* 770 N.E.2d 315, 318 (Ind.2002). Our supreme court has explained the rationale for the exceptions:

> The duties associated with Indiana's five exceptions are considered non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed "so important to the community" that the employer should not be permitted to transfer these duties to another.... The exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries.

*Bagley v. Insight Commc'ns Co.,* 658 N.E.2d 584, 587–88 (Ind.1995) (citations omitted). The exceptions reflect the idea that, in certain circumstances, "the employer is in the best position to identify,

minimize, and administer the risks involved in the contractor's activities." *Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999) (quoting 7 Am.Jur. Proof of Facts 3d § 1 at 483).

■ Here, the Howards and E & B Paving opposed INDOT's motion for summary judgment and claimed error in the trial court's grant of summary judgment on the basis of the second exception: that INDOT is charged by law with performing the specific duty. Indiana cases have long recognized that governmental entities have a specific obligation with respect to public travel and have a responsibility to exercise reasonable care in the selection of persons to repair bridges and streets. *See Shand Mining, Inc. v. Clay County Bd. of Comm'rs,* 671 N.E.2d 477, 481 (Ind.Ct. App.1996), *trans. denied; City of Indianapolis v. Cauley,* 164 Ind. 304, 309–10, 73 N.E. 691, 693–94 (1905) (holding that it is the legal duty of a municipality to exercise supervision over bridges under its control and to make inspection as ordinary care and diligence require). Although a governmental entity can delegate its responsibility for maintaining streets to a private party, it cannot avoid liability for negligent maintenance of the streets on the basis of its delegation. *Shand Mining,* 671 N.E.2d at 481.

INDOT contends that the non-delegable duty exception applies only if the principal is negligent in supervising the agent and cites *Shand Mining* and *City of Vincennes v. Ruehl,* 672 N.E.2d 495 (Ind.Ct.App. 1996), *trans. denied,* in support of its position. In *Shand Mining,* the plaintiffs were involved in an automobile accident and sued Shand Mining and Clay County for breach of their duty to maintain the road. Clay County filed a cross-claim

against Shand Mining, alleging that Shand Mining was contractually obligated to maintain the road. Clay County filed a motion for summary judgment, alleging governmental immunity. The trial court granted Clay County's motion, and Shand Mining appealed. We held that Clay County was not entitled to summary judgment on the basis of immunity:

> [T]he legislature has specifically charged the county supervisor with the supervision of the maintenance and repair of all highways within the county. Ind.Code § 8–17–3–2.... Thus, while we agree that Clay County may exercise its discretion to delegate responsibility for maintaining a road to a private entity such as Shand Mining, we cannot say that it is relieved of liability on the basis of its delegation.

671 N.E.2d at 481. However, because the complaint alleged that Clay County was negligent in its maintenance and repair of the road, and because Clay County had properly delegated the duty to maintain the road to Shand Mining, "Clay County can only be liable if the [plaintiffs] demonstrate that Shand Mining was negligent in its maintenance or repair of the road and that Clay County negligently failed to supervise such repair or maintenance by Shand Mining." *Id.* at 482. Finding in the designated evidence no testimony, affidavits, depositions, or other proof establishing that Shand Mining negligently repaired or maintained the road or that Clay County negligently supervised such maintenance,[2] we held that Clay County was entitled to summary judgment.

In *Ruehl,* the city of Vincennes had entered into an agreement with Environmental Management Corporation ("EMC") for EMC to operate and maintain Vincennes's

---

2. Shand Mining relied solely on the plaintiffs' complaint in support of its argument that there was a genuine issue of material fact to withstand summary judgment. The court

noted that Shand Mining would not be likely to advance a theory advocating that its own actions were negligent. *Id.* at 482 n. 4.

wastewater treatment facility, including the sewer collection lines and related collection system. Vincennes contracted with Rogers Construction Group, Inc., to resurface various city streets. When Rogers resurfaced a street near a storm sewer, it left space around the sewer so EMC could cement around the grate. The plaintiff was injured when she stepped into a hole next to a sewer grate and she sued Vincennes, EMC, and Rogers. Vincennes sought but was denied summary judgment. On appeal, we held that although Vincennes properly exercised its discretion to delegate its duty to maintain its sewer system and streets to EMC and Rogers, it was not entitled to immunity because it is charged by law with the non-delegable duty of maintaining public travel. In a footnote, citing to *Shand Mining*, we stated:

> Throughout their briefs, the parties argue about whether [the plaintiff's] complaint alleges direct or vicarious liability against Vincennes. To the extent that [the] complaint alleges Vincennes was negligent for acts delegated to another party, its liability is vicarious. As a result, Vincennes['s] liability is limited to its negligent failure to supervise the other party in its performance of the delegated acts. However, to the extent that [the] complaint alleges negligence for

separate, non-delegated acts or omissions, Vincennes can be held directly liable.

672 N.E.2d at 498 n. 1.

Based on these two cases, INDOT contends that in setting aside its prior summary judgment entry, the trial court "expanded the nondelegable duty exception beyond that previously applied by Indiana appellate courts." Appellants' Brief at 9. INDOT contends that because, in its view, the "undisputed evidence establishes that [INDOT] did not negligently supervise E & B Paving," *id.* at 11,[3] the trial court must have imposed a greater duty upon it than just the duty to supervise. We disagree with INDOT's view of the designated evidence.

The designated evidence shows that INDOT knew traffic control devices were not in place in accordance with its specifications.[4] INDOT's area supervisor visited the construction site the day of Amber's accident and knew that temporary lane marking tape had come up in the construction zone. Daily reports indicate that INDOT knew the tape had come up in the days leading up to November 13 as well. The area supervisor also noted the need for more barrels along the side of the road in the construction area. The designated evidence shows that INDOT instructed E

**3.** INDOT contends in its reply brief that the Howards did not assert in the trial court that there are genuine issues of material fact concerning INDOT's negligent supervision of E & B Paving's work and has therefore waived the issue. *See* Appellants' Reply Brief at 2–3. In its response to INDOT's motion for summary judgment, the Howards asserted that the issue of whether INDOT was liable for the "failure to manage" the construction project is a jury question, which is akin to saying that there is a fact question about whether INDOT satisfied its duty to supervise. Appellants' App. at 71; *see also id.* at 121–25 (the Howards' response to INDOT's motion to enter final judgment and renewed objection to summary judgment asserting that whether INDOT

failed in its "duty to monitor" the project is a jury question). We can discern no basis for waiver of this issue.

**4.** The INDOT Standard Specifications Manual, which is apparently part of the contract between INDOT and a private entity contracted to perform road work on INDOT's behalf, provides, in part, that temporary pavement markings are to be placed as specified and that where the pavement or shoulder has a drop-off of more than three inches, barrels shall be placed at least every 200 feet. *See* Appellants' App. at 111 (Indiana Dep't of Transp. Standard Specifications Manual at 119, section 107.12).

& B Paving regarding the required traffic control devices, that E & B Paving indicated it would resolve the situation, and that it is E & B Paving's "oral policy" for its project foreman to drive the project at the end of each day to ensure that the job is safe and meeting specifications. *Id.* at 62. When Captain Scott arrived at the scene of Amber's accident, there were no lane markings and no barrels or cones along the side of the road in the area of the accident. No evidence was designated that INDOT returned to the construction site to determine whether the safety measures were, in fact, in place. INDOT's representative acknowledged that INDOT has "oversight on the contract." *Id.* at 47. Moreover, INDOT acknowledged in its

memorandum in support of its motion for summary judgment that INDOT had the responsibility "to ensure that the contractor did the work within the specifications" included as part of the contract. *Id.* at 21.

The designated evidence shows a genuine issue of material fact regarding the negligence of E & B Paving in doing the work[5] and INDOT in supervising it. Whether telling the contractor to add or replace traffic control devices without more is reasonable is a question of fact. Therefore, summary judgment for INDOT was not warranted, and in vacating its previous order granting summary judgment, the trial court did not necessarily impose a duty greater than supervision upon INDOT.[6]

**5.** In its appellate brief, E & B Paving, while "vehemently denying" it was negligent, concedes "there was evidence presented which could lead to a question of fact regarding whether E & B was negligent." [E & B Paving's] Appellee's Brief at 11.

**6.** The Howards do contend that INDOT has a duty greater than supervision. They posit that Indiana Code section 8–17–3–2, relied upon in *Shand Mining*, provides specific authority for a county to delegate its duty regarding county roads, *see* Ind.Code § 8–17–3–1 ("[The] county highway supervisor has general charge of the repair and maintenance of the county highways."), and charges the county only with the non-delegable duty of supervision. In contrast, they point to IN-DOT's enabling legislation, which gives IN-DOT the more general responsibility for the "construction, reconstruction, improvement, maintenance, and repair of state highways." Ind.Code § 8–23–2–4.1(4). In addition, IN-DOT is to "place and ... maintain traffic control devices conforming to the state manual and specifications upon all state highways ... as necessary to indicate and carry out this article or to regulate, warn, or guide traffic." Ind.Code § 9–21–4–2(a). The Howards contend that because these statutes do not provide for delegation or a specific duty to supervise, INDOT's duty to maintain and repair state highways and place traffic control devices is non-delegable and not limited to supervision. First, it is clear that INDOT can

delegate the performance of its duty to maintain and repair state highways. *See* Ind.Code §§ 8–23–9 (describing the procedure for awarding state highway contracts). Second, we do not believe the "duty to supervise" referred to in *Shand Mining* arises solely from the language of section 8–17–3–2. Although the court in *Shand Mining* did refer to section 8–17–3–2, the court also cited *Wabash County v. Pearson*, 120 Ind. 426, 22 N.E. 134 (1889), which held that where a county's board of commissioners was charged by statute with maintaining public bridges, it could be held liable for its negligent supervision of persons employed to repair a bridge when the bridge was left in an unsafe condition. 671 N.E.2d at 481. There was no mention in *Pearson* of specific statutory authority for the county board of commissioners to delegate its duty to maintain bridges, nor was there mention of a statute imposing a specific duty to supervise. Rather, we believe the duty arises from the general nature of the relationship between INDOT and its contractors: the contractor is to perform work within the specifications provided by INDOT and INDOT is to ensure that the work is so performed.

E & B Paving asserts that there is a genuine issue of material fact regarding whether INDOT was independently negligent in its design, construction, or maintenance of the road that would also preclude summary judgment. The Howards' complaint does not state a claim against INDOT for negligent design, construction, or maintenance of the

*Conclusion*

The trial court did not abuse its discretion in granting the motions to correct error and vacating the summary judgment previously entered. The judgment of the trial court is affirmed.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

road. *See* Appellants' App. at 35 (Count III of the complaint, alleging that INDOT was "supervising, performing, inspecting, participating in, and/or providing instrumentalities for road shoulder resurfacing and paving work," that it had a duty to use reasonable care, and that it breached that duty). E & B Paving did not file a cross-claim against INDOT stating such a claim. Accordingly, this issue is not properly before the court, and we decline to address it.