

FILED

Mar 22 2023, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Daniel H. Pfeifer
Peter D. Hamann
Ryan G. Milligan
Jeffrey J. Stesiak
Pfeifer Morgan & Stesiak LLP
South Bend, Indian

ATTORNEYS FOR APPELLEE
MEMORIAL HOSPITAL D/B/A
BEACON HEALTH AND FITNESS

John M. McCrum
Louis W. Voelker
Kyle G. Grothoff
Eichhorn & Eichhorn
Hammond, Indiana

ATTORNEYS FOR APPELLEE
SPEAR CORPORATION

Lyle R. Hardman
Hunt Suedhoff Kearney LLP
South Bend, Indiana

Beverly J. Mack
Huelat & Mack P.C.
LaPorte, Indiana

Scott A. Ruksakiati
Tyson & Mendes
Chicago, Illinois

ATTORNEYS FOR APPELLEE
PANZICA BUILDING CORPORATION

Martin J. Gardner
Christopher J. Uyhelji
Andria M. Oaks
Gardner & Rans P.C.
Granger, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jennifer Pennington
and Joshua Pennington,

*Appellants-Plaintiffs / Cross-Appellees,*

v.

Memorial Hospital of South
Bend, Inc. d/b/a Beacon Health
and Fitness,

*Appellee-Defendant / Cross-Appellant,*

Spear Corporation, and Panzica
Building Corporation

*Appellees-Defendants.*

March 22, 2023

Court of Appeals Case No.
22A-CT-1573

Appeal from the St. Joseph
Superior Court

The Honorable Cristal C. Brisco,
Judge

Trial Court Cause No.
71D04-1804-CT-160

**Opinion by Judge Bailey**
Chief Judge Altice and Judge Riley concur.

**Bailey, Judge.**

# Case Summary

Jennifer and Joshua Pennington filed a Fourth Amended Complaint alleging, among other things, that Jennifer sustained personal injuries in a swimming pool designed and constructed by Spear Corporation ("Spear") and Panzica Building Corporation ("Panzica"), which was owned and operated by Memorial Hospital of South Bend, Inc. d/b/a Beacon Health and Fitness ("Beacon"). The trial court granted summary judgment to Spear and Panzica and partial summary judgment to Beacon. Some of the parties pursued separate interlocutory appeals, and this Court accepted jurisdiction and consolidated the matters for appeal.[1] We affirm.

# Issues

The Penningtons present three issues for review:

    I.     Whether the trial court abused its discretion by striking deposition testimony from Dr. Thomas Sawyer regarding the applicable standard of care for swimming pool design;

    II.    Whether the trial court abused its discretion by striking three exhibits from the Penningtons' designated materials; and

---

[1] By an order of October 11, 2022, Court of Appeals Cause Numbers 22A-CT-1573 and 22A-CT-1950 were consolidated under Cause Number 22A-CT-1573. Pursuant to Appellate Rule 46(D), the Penningtons are Appellants/Cross-Appellees, and Beacon is the Appellee/Cross-Appellant. Panzica and Spear are Appellees. Some prior defendants have been dismissed from this action.

III.    Whether summary judgment was improvidently granted to
        Spear on the negligent design count.[2]

On cross-appeal, Beacon argues that it is entitled to summary judgment on the
premises liability negligence claim.[3]

# Facts and Procedural History

[3]    In January of 2015, Beacon contracted with Panzica to design and build a
health and fitness center in Granger, Indiana.  Panzica served as the principal
architect and project designer/builder.  Panzica created project plans and
subcontracted with Spear to create drawings and designs for the multipurpose
pool to be used for lap swimming and water aerobics.

[4]    As completed, the pool measured 28' by 75' with entry available either by stairs
or by a 4' wide descending ramp intended to accommodate persons with limited
mobility.  There was a 5'6" by 3'6" wing wall adjacent to the stairs and a 47'
wing wall adjacent to the ramp.  The opening between the two wing walls was
22'6", wide enough to accommodate water aerobics.  The water level was
regulated by a fixed sensor, designed to keep the water so that it "breaks [at] the
edge of the pool."  (App. Vol. IX, pg. 213.)  Four lanes were designated for lap

---

[2] Summary judgment was granted to Spear and Panzica on the failure to warn claim, without opposition
from the Penningtons.

[3] Beacon's interlocutory appeal does not include the trial court's order on Count II, failure to warn and
instruct about dangers inherent in the pool as constructed.

swimming, one of which bordered the 22'6" opening. Flags were placed 15' from the end of the pool to guide backstroke swimmers.



[5] In November of 2016, Beacon opened its Beacon Health & Fitness facility for patrons. On November 16, Jennifer went to the facility to swim before commencing her work day as a family physician. Jennifer entered the southernmost lane – that closest to the opening in the wing walls – and began her typical exercise routine which involved various swim strokes. At some point, Jennifer was positioned on her back and using backstrokes when she apparently drifted into the gap between wing wall abutments. The crown of her head collided with concrete, allegedly causing serious injury.

On April 10, 2018, the Penningtons filed a Complaint for Damages. As amended, the complaint stated five counts. Count I alleged that Beacon, Spear, and Panzica failed to exercise reasonable care in designing the lap pool. Specifically, the Penningtons alleged:

> The design failures include, but are not limited to, the following: (a) a flawed design process; (b) swimming lanes that are narrower than applicable standards; (c) a wing wall design and structure that creates an unreasonable risk of serious injury; (d) a wing wall design that permits the wing wall to be submerged in violation of applicable regulations and building standards; and (e) failing to include adequate guidance and safety measures.

(Beacon's App. Vol. II, pg. 5.)

Count II alleged that Beacon, Spear, and Panzica failed to warn and instruct about dangers inherent in swimming in the lap pool as constructed. Specifically, the Penningtons alleged:

> [E]ach breached that duty by, among other things, failing to (a) warn about or instruct the appropriate parties regarding backstroke swimming in the pool lane adjacent to the wing wall; (b) instruct Beacon to provide or provide adequate warning signage or instructions; and (c) instruct Beacon to provide or provide adequate guidance aids such as floating lane lines.

(*Id.* at 6.)

Count III stated a claim against Beacon, individually, for negligent maintenance and operation:

> Beacon breached its duty by failing to exercise reasonable care in the maintenance and operation of the swimming pool and failing to remedy dangerous conditions, including but not limited to (a) failing to maintain and operate the lap pool with appropriate water levels; (b) failing to provide guidance aids and safety features such as floating lane lines and adequate padding; and (c) failing to provide adequate warnings and instructions.

(*Id.* at 7.)

[9] Count IV alleged that Spear and Panzica were negligent in the construction of the project. Specifically, the Penningtons alleged:

> Spear and [Panzica] breached their duty to the Penningtons by, among other things, the following: (a) [Panzica] failed to adequately supervise Spear in the construction and completion of the lap pool; (a) [sic] [Panzica] and Spear failed to give adequate consideration to safety; (b) [Panzica] and Spear failed to recognize and address conditions that could cause injury to the swimmer; and (c) [Panzica] and Spear failed to complete the project in conformance with industry standards and regulations.

(*Id.* at 8.) Count V stated a derivative claim for Joshua's loss of Jennifer's services and companionship.

[10] In March of 2022, Beacon and Spear filed motions for summary judgment, in which Panzica later joined. In sum, their contentions were that: pool construction had complied with the Indiana Administrative Code; no safety concerns had been raised during inspection; and placement of the wing walls was open and obvious. Beacon designated affidavits and deposition testimony indicating regulation compliance. Spear designated the deposition testimony of

pool designer and licensed professional engineer Matthew Reynolds, opining that the pool design was not unsafe and that professional design standards had not been breached.

[11] The Penningtons opposed the motions for summary judgment, contending that the opening between wing walls was unnecessarily wide and that the water level was high enough to obscure swimmer perception of wing walls. Thomas Sawyer Ed.D., the Penningtons' proffered expert witness, took the position that the defendants could have been negligent, notwithstanding compliance with applicable regulations.

[12] Beacon filed a motion to exclude Dr. Sawyer's deposition testimony. On May 4, 2022, the trial court issued an order providing that Dr. Sawyer would not be entirely barred from offering an opinion. However, his opinion testimony was restricted to that which did not concern pool construction or design but only concerned the management and operation of the aquatic facility.

[13] On May 12, 2022, the trial court conducted a summary judgment hearing, at which argument of counsel was heard, primarily concerning disputes over evidentiary submissions. The defendants asked the trial court to strike the Penningtons' submissions of: design meeting minutes; emails produced in discovery by defendants and a former defendant; design drawings; and photographs that depicted the addition of padding on a wing wall and the pool's water level twenty months after the incident.

[14] On June 10, the trial court issued an order on the evidentiary disputes and the pending motions for summary judgment. The court found admissible Exhibit 4 (design meeting minutes) and Exhibit 8 (pool drawings) and took judicial notice of pool building standards. The court found inadmissible Exhibit 6 (labeled as a design binder), Exhibit 7 (emails partially concerning remedial measures), and Exhibit 12 (pool photographs that the court deemed untimely and irrelevant submissions).

[15] In light of the designated expert testimony that professional architectural standards had not been breached with the design of the pool, which was uncontroverted by expert testimony of a breach, the trial court granted summary judgment to Spear and Panzica on the design negligence claim. Summary judgment was granted to Beacon on claims other than "sub-part (c) of Count 3," purportedly restricting trial to less than all factual allegations pertinent to Count III, the premises liability claim. Appealed Order at 10. The trial court stated that "whether Beacon should have operated the Pool in a manner different is one subject to a dispute of material facts, mainly in the testimony of Dr. Thomas Sawyer on the operations of pool facilities." *Id.* According to the order, the Penningtons were to proceed to trial upon their allegation that Beacon "failed to provide adequate warnings and instructions." *Id.*

[16] In sum, the trial court determined that a single conclusion could be drawn as to negligence in design; that is, the architect-designers did not breach professional standards in the inclusion of features of the pool. On the other hand, the trial

court concluded that a genuine issue of material fact existed as to negligence in operational decisions. The designated materials indicate that decisions made by Beacon included: designating for lap swimming four lanes (one of which allowed swimmers to proceed past the opening between the wing walls) as opposed to fewer and wider lap lanes; not utilizing a rope in the opening between the wing walls; and placement of the flags to guide backstroke swimmers.[4]

[17] On June 30, 2022, the trial court entered judgment for Spear as a final and appealable order, and the Penningtons appealed that judgment. Beacon initiated a separate interlocutory appeal, and this Court accepted jurisdiction and consolidated the two appeals. On appeal, the Penningtons contend that summary judgment was improvidently granted on the design negligence claim; Panzica (joined in argument by Spear) presents argument to the contrary; and Beacon contends that the premises liability claim should not proceed to trial.

---

[4] The Penningtons have contended that the pool was operated with a water level high enough to obscure a backstroke swimmer's clear vision of the wing walls. Beacon's aquatics facility coordinator averred that "pool water is pumped continuously through filters and rises to the level of a gutter system which collects the water near the top of the pool walls, enabling it to re-circulate through the gutter" and also averred: "The water level is maintained by an automatic sensor at the level of the gutter, which was installed by the builder of the pool. Once the water reaches the sensor, the water will automatically stop filling the pool." Finally, he averred: "Given the automatic nature of the water sensor, this level of water – which goes to the edge of the gutter but not over the top of the pool walls – has remained constant since the multipurpose pool was opened for use, and there have been no reported malfunctions in the sensor's operation." (Affidavit of Brad Jasinski, pgs. 2-3.) No change had been made since installation; however, it is not clear that the sensor was absolutely fixed such that a change could not be made. The designated materials do not foreclose an inference that Beacon had some means of manipulating or relocating the sensor that controlled the water level.

# Discussion and Decision

## Jurisdiction and Procedural Posture

[18] The Indiana Court of Appeals has jurisdiction in appeals from final judgments. Ind. Appellate Rule 5(A). A "final judgment" is one which "disposes of all claims as to all parties...." App. R. 2(H)(1). Here, the Fourth Amended Complaint set forth five counts against three named defendants in the aggregate, with each named defendant responding to four counts.[5] The trial court's order of June 10, 2022, did not dispose of all claims as to all parties. Indiana Trial Rule (C) provides that a summary judgment upon less than all of the issues involved or with respect to less than all the claims or parties is interlocutory unless "the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties."

[19] Spear obtained trial court certification of the order for summary judgment in its favor and the Penningtons appealed that certified final order.[6] Spear responded and Panzica obtained permission from this Court to join Spear's brief; Panzica has not sought certification of the June 10, 2022, order as it pertains to Panzica.

---

[5] Additional defendants named by Beacon – Design Organization and Panzica II – were dismissed and were not named as defendants in the Fourth Amended Complaint.

[6] The Notice of Appeal filed in 22A-CT-1950 stated that the order being appealed was the order of June 10, 2022. However, that order was interlocutory, with Count III proceeding to trial. On June 30, 2022, the order as to Spear was declared a final and appealable judgment. The Penningtons could thus appeal that portion of the June 10 order. Also, on September 19, 2022, this Court accepted jurisdiction of Beacon's discretionary interlocutory cross-appeal, to which the Penningtons could respond.

Subsequent to the filing of the Penningtons' appeal, Beacon obtained certification of the trial court order denying Beacon summary judgment on the premises liability claim against it. On September 19, 2022, this Court accepted jurisdiction of Beacon's cross-appeal, to which the Penningtons could then respond. This Court also ordered that the appeals be consolidated.

[20] Beacon points out that, as to the order for partial summary judgment in Beacon's favor on the negligent design and failure to warn claims (Counts I and II), no party has complied with the requirement for certification. As such, as the partial summary judgment order pertains to Beacon on these counts, the orders are interlocutory and not the subject of current appellate review.

[21] Additionally, Beacon claims that the Penningtons cannot contest, in this appeal, what Beacon appears to characterize as a ruling in its favor on some portions of Count III, the premises liability claim. Beacon interprets the order on Count III as follows: "The only remaining part of the claim was the alleged failure to provide adequate warnings to swimmers on the use of the southernmost lane, particularly to those swimmers engaged in the backstroke." Appellant's Brief at 16. According to Beacon, "the trial court only adjudicated certain allegations within that count, e.g., the allegation that Beacon failed to maintain appropriate water levels and the allegation that it failed to provide adequate safety features, such as lane lines and padding." Beacon Reply Brief at 18.

[22] But summary judgment is not a means for resolution of factual disputes and "should not be used as an abbreviated trial, even where the proof is difficult or where the court may believe that the non-moving party will not succeed at trial." *Pierson ex rel. Pierson v. Serv. Am. Corp.*, 9 N.E.3d 712, 715 (Ind. Ct. App. 2014), *trans. denied*. Summary judgment is appropriate only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). We review de novo whether the trial court properly granted summary judgment. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[23] As these are summary judgment proceedings, the trial court was not in a position to adjudicate factual disputes. The parceling of a claim within a claim based upon resolution of factual disputes is inconsistent with our summary judgment standard. In short, in summary judgment proceedings, the trial court does not act as a factfinder to narrow the issues of fact pertinent to a claim that proceeds to trial. We will review de novo – based upon the law and the record of designated materials – whether Beacon is entitled to summary judgment on Count III, the premises liability claim.

## Expert Testimony – Evidence Rule 702

[24] The Penningtons first contend that the trial court abused its discretion when it excluded the proffered expert testimony by Dr. Sawyer that the pool was negligently designed because, among other things, the opening between wing walls was unnecessarily wide, and the design featured no padding for abutments. Dr. Sawyer acknowledged that the pool design complied with

applicable Indiana codes and industry standards but asserted that more consideration could have been given to safety concerns.

> The admission or exclusion of expert testimony lies within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000), *trans. denied*. Indiana Evidence Rule 702, governing expert testimony, contains two requirements for a witness to qualify as an expert: "(1) the subject matter is distinctly related to some scientific field, business or profession beyond the knowledge of the average lay person; and (2) the witness is shown to have sufficient skill, knowledge or experience *in that area* so that the opinion will aid the trier of fact." *Bacher v. State*, 686 N.E.2d 791, 800 (Ind. 1997).

*Miller v. Bernard*, 957 N.E.2d 685, 693 (Ind. Ct. App. 2011) (emphasis added).

[25]  Panzica acted as chief architect and received design input from Spear in relation to the pool. The standard of care for design professionals is well established:

> The responsibility of an architect is similar to that of a lawyer or physician. *Lukowski v. Vecta Educational Corp.*, 401 N.E.2d 781, 786 (Ind. Ct. App. 1980). "When he possesses the requisite skill and knowledge, and in the exercise thereof has used his best judgment, he has done all the law requires." *Id*. Thus, the key question in determining whether an architect has been negligent is not whether error occurred, but whether the architect breached a duty to exercise "the degree of competence ordinarily exercised in like circumstances by reputable members of the profession...." *Walters v. Kellam & Foley*, 172 Ind. App. 207, 360 N.E.2d 199, 206 (1977). Absent a special agreement, an architect does not imply or guarantee a perfect plan. *Lukowski*, 401 N.E.2d at 786. Furthermore, an architect "is not a warrantor of his plans and specifications. The result may show a mistake or defect,

although he may have exercised the reasonable skill required."
*Id.* (quoting *Bayne v. Everham*, 197 Mich. 181, 163 N.W. 1002 (1917)).

*Mayberry Café, Inc. v. Glenmark Constr. Co.*, 879 N.E.2d 1162, 1173 (Ind. Ct. App. 2008), *trans. denied*.

In his deposition, Dr. Sawyer expressed the view that the pool featured an unsafe or inadequate design, notwithstanding code compliance. As to his qualifications to render an opinion on whether a pool designer breached the standard of care, Dr. Sawyer testified as follows.

> Q: And will you agree, sir, that since you're not a licensed architect or a licensed professional engineer that you have never designed from an engineer's perspective or an architect's perspective a pool in the State of Indiana?
>
> A: I agree.
>
> Q: So is it true that your name has never been submitted as a design professional of record for any pool anywhere in the United States?
>
> A: That's correct.
>
> Q: And is it true that you have no experience in how to engineer the design of a swimming pool?
>
> A: That's correct.

Q: And is it true that you don't have any education in how to engineer the design of a swimming pool?

A: That's correct.

Q: And you don't have any training as to how to engineer the design of a swimming pool; is that true?

A: That's correct.

Q: And do you agree that since you're not trained, educated or licensed as an engineer that you're not qualified to give an opinion as to the standard of care applicable to an engineer who signs and stamps a set of pool drawings?

A: That's correct.

Q: And since you're not a licensed architect by education, training or licensure, do you agree that you're not qualified to give an opinion as to the standard of care applicable to an architect who may be signing or stamping a set of plans which include pool drawings?

A: That's correct.

Q: Your expertise is really how to safely operate an aquatic facility; is that right?

A: That's correct.

(Pennington App. Vol. III, pg. 64.) As such, the witness was not shown to have "sufficient skill, knowledge or experience in that area so that the opinion will aid the trier of fact." *Bacher*, 686 N.E.2d at 800.

[27] The Penningtons attempt to characterize their negligent design claim as simply presenting a "premises liability case" and argue that such a case is to be evaluated under traditional principles of negligence. Appellant's Brief at 31. They direct our attention to *Hiatt v. Brown*, 422 N.E.2d 736 (Ind. Ct. App. 1981). There, an injured Indianapolis International Airport patron, a "stranger to the architect-owner relationship," obtained reversal of a summary judgment granted to the architect, because there existed a genuine issue of material fact as to the architect's alleged negligence. *Id.* at 738. Nonetheless, this claim was not one which survived summary judgment in the absence of expert testimony. Rather, there had been presented "expert testimony by deposition that Brown did not follow the ordinary standards of architectural practice in failing to study available information regarding [a] jet blast problem." *Id.* at 737. *Hiatt* does not support the Penningtons' assertion that a breach of professional negligence standards may be shown absent expert testimony.

[28] Additionally, the Penningtons point out that Dr. Sawyer, a retired professor of Kinesiology, Recreation, and Sport at Indiana State University, has a comprehensive background including teaching about facility development and design. Indeed, the trial court ruled that designated evidence consistent with Dr. Sawyer's field of expertise – safe operations of an aquatic facility – would be admissible. But the Penningtons have not shown that the trial court abused

its discretion by excluding deposition testimony that the defendants were negligent because they produced an unsafe design, when Dr. Sawyer had no training, background, experience, or expertise in development of a pool design.

## Admissibility of Summary Judgment Materials

[29] Indiana Trial Rule 56 permits parties to submit affidavits and evidence in support of their motions for summary judgment. That rule states in relevant part:

> [A] party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. . . .Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Ind. Trial Rule 56(C)-(E). "Thus, in ruling on a motion for summary judgment, the trial court will consider only properly designated evidence which would be admissible at trial." *Zelman v. Capital One Bank (USA) N.A.*, 133 N.E.3d 244, 248 (Ind. Ct. App. 2019). "Unsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139, 1141 (Ind. Ct. App. 2013). We accord great deference to the evidentiary rulings of the trial court and will reverse only for an abuse of discretion. *Blevins v. Clark*, 740 N.E.2d 1235, 1238 (Ind. Ct. App. 2000). An abuse of discretion

occurs when the trial court's decision is against the logic and effect of the facts and circumstances set before it. *Id.*

[30] The Penningtons challenge the exclusion of Exhibit 6, materials related to design ostensibly provided in discovery by dismissed defendant Design Organization. They also challenge the exclusion of Exhibit 7, containing in relevant part an email produced in discovery by Beacon, wherein a principal of Panzica stated: "Our client as well as your and our firm have a condition that exposes all of us to liability for injury." (App. Vol. IV, pg. 217.) Finally, the Penningtons challenge the exclusion of Exhibit 12, proffered photographic evidence purportedly showing water levels at an unsafe height in the pool and also showing that padding had been added to a wing wall abutment.

[31] Exhibit 6 consists of emails, photographs, handwritten notes, materials lists, and design plans selected from discovery materials; it was apparently mislabeled as "Spear Design Binder." Appealed Order at 5. The trial court excluded Exhibit 6 as "documents grouped together without authentication, foundation, or explanation." *Id.* We find no abuse of discretion in the exclusion of miscellaneous documents curated from discovery products and mislabeled, unsworn and unverified in their proffered form.

[32] The trial court excluded pool photographs taken twenty months after the incident as lacking in relevance because the photographs did not depict the conditions at the time of the incident or soon thereafter. The trial court also

observed that the photographs showed padding, a remedial measure. Indiana Evidence Rule 407 provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
>
> • culpable conduct;
>
> • a defect in a product or its design; or
>
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures thereafter.

[33] Underlying Rule 407 is a public policy based on fear that permitting proof of subsequent remedial action will deter a defendant from taking action that will prevent future injuries. *Strack and VanTil, Inc. v. Carter*, 803 N.E.2d 666, 670 (Ind. Ct. App. 2004). Evidence of repair may constitute an admission by the defendant but it may instead "connote the defendant's exercise of care beyond that required by the law: the defendant turns to measures beyond those required by reasonable care." *Id.* at 671. As such, "'[a] person may have exercised all the care which the law required, and yet, in light of the new experience, after an unexpected accident has occurred, and as a measure of

extreme caution, he may adopt additional safeguards."' *Id.* (quoting *Terre Haute & I.R. Co. v. Clem*, 123 Ind. 15, 23 N.E. 965 (1890)). Here, the exclusion of photographs showing remedial measures in place twenty months after the incident was not an abuse of discretion.

[34] Arguably, Exhibit 7, suggesting action might be warranted to avoid exposure to liability, amounts to a party admission that a hazardous condition existed. *See* Ind. Evidence Rule 804. But summary judgment was granted to the defendants on the design negligence claim due to the negation of the element of breach of duty. An expression of concern about a need for remedial measures after an incident is not equivalent to an admission that the design architects breached a duty of care. In these circumstances, the exclusion of the email did not affect the Penningtons' substantial rights. The exclusion of Exhibit 7 does not alter the summary judgment analysis upon the negligent design claim.

## Summary Judgment on Design Negligence Claim

[35] The Penningtons argue that the trial court improvidently granted summary judgment to Spear and Panzica on the design negligence claim.[7] Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. When we review a grant of

---

[7] The order granting summary judgment to Panzica remains interlocutory, although Panzica was granted leave to join in the brief of Spear.

summary judgment, our standard of review is the same as that of the trial court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002). We consider only those facts that the parties designated to the trial court. *Id.* The Court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id.*

[36] A trial court's order on summary judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this Court that the decision was erroneous. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied.* We may affirm the grant of summary judgment upon any basis argued by the parties and supported by the record. *Payton v. Hadley*, 819 N.E.2d 432, 438 (Ind. Ct. App. 2004). However, Trial Rule 56(H) specifically prohibits this Court from reversing a grant of summary judgment on the ground that there is a genuine issue of material fact, unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 45 (Ind. Ct. App. 2004).

[37] "To prevail on a theory of negligence, a plaintiff must prove: (1) that the defendant owed plaintiff a duty; (2) that it breached the duty; and (3) that plaintiff's injury was proximately caused by the breach." *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). Summary judgment is rarely appropriate in negligence cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.

2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person – one best applied by a jury after hearing all of the evidence." *Id.* "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Pelak v. Indiana Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *trans. denied.*

[38] Here, relative to the breach of duty element, the defendants to the negligent design claim designated the engineering report and deposition testimony of Matthew Reynolds. Reynolds offered his "professional opinion based upon a reasonable degree of engineering certainty, that the incident swimming pool is reasonably safe for its intended use." (App. Vol. III, pg. 41.) Reynolds additionally stated that the pool was compliant with the Indiana Administrative Code, which permits wing walls; its features were common in the aquatics industry; the pool met standards of care relative to other Indiana facilities he had researched; he had found no defects; and he did not consider the pool unreasonably dangerous. The defendants also designated materials indicating that the pool had passed the inspection required for a public facility.

[39] A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific

facts demonstrating the existence of a genuine issue for trial. *Id*. To withstand summary judgment after the defendants made a prima facie showing that the professional standard of care had not been breached, it was incumbent upon the Penningtons to come forward with some designated evidence of a breach. They did not do so. Summary judgment was not improvidently granted on the design negligence claim under review.

## Summary Judgment on Premises Liability Claim

[40] At the summary judgment hearing, Beacon and the Penningtons agreed that Jennifer was an invitee onto land and that Count III, denominated a claim for negligent maintenance and operation, was a premises liability claim governed by the Restatement (Second) of Torts § 343, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

[41] The Restatement instructs that Section 343 should be read together with Section 343A. Restatement § 343, cmt. a. Section 343A(1) provides:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

[42] Beacon argues that it is entitled to summary judgment on the premises liability claim because the designated materials negate the element of duty here. Absent a duty, there can be no breach. *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004). In a negligence action, the existence of a duty is generally a pure question of law. *Indiana Dep't of Transp. v. Howard*, 879 N.E.2d 1119, 1122 (Ind. Ct. App. 2008). However, factual questions may be interwoven, rendering the existence of a duty a mixed question of law and fact to be determined by the fact-finder. *Id.*

[43] Beacon asserts that no duty can be imputed to it because "Beacon had no actual or constructive knowledge of any dangerous condition inherent in the pool design and no reason to expect that Jennifer Pennington or any other lap swimmer would not observe the observable and exercise reasonable care while using the pool." Beacon's Brief at 20. We agree with Beacon that the summary judgment record reveals that there was no "dangerous condition inherent in the pool design." *See id.* And there is no dispute that Jennifer had a duty to exercise reasonable care for her own safety. However, the allegations against Beacon were not limited to failure to warn of inherent defects in the pool. The Penningtons also alleged that Beacon made operational decisions such that the pool was unsafe for an invitee conducting the activity at issue, i.e., swimming backstroke in the lap lane nearest the opening between wing walls.

[44]     Confining its argument to fixed attributes of the pool, Beacon's position is that it had no reason to suspect a danger and that harm to Jennifer was not foreseeable within the context of duty. But our Indiana Supreme Court has recognized that the landowner's duty of reasonable care extends not only to harm caused by a condition on the land but also may be extended to activities being conducted thereon. *Rogers v. Martin*, 63 N.E.3d 316, 323 (Ind. 2016). However, "the landowner-invitee 'duty to protect' is not limitless, because some harms are so unforeseeable that a landowner has no duty to protect an invitee against them." *Id.* at 324.

> [I]n the duty arena, foreseeability is a general threshold determination that involves an evaluation of (1) the broad type of plaintiff and (2) the broad type of harm. In other words, this foreseeability analysis should focus on the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected—without addressing the specific facts of the occurrence.

*Id.* at 325.

[45]     Here, the broad type of plaintiff would be patrons of the pool and the broad type of harm would be injury from a patron's impact with the pool. It is foreseeable within the context of duty that a patron might collide with an abutment of a pool, albeit designed and constructed in conformance with reasonable professional standards. Beacon does not act as the insurer of the patron's safety, *see id.* at 326, but rather could be expected to take reasonable precautions to lessen the potential for collision or to prevent injury when a

collision happens. Assuming, as we must, that the pool was designed such that it was not inherently unsafe, it is nonetheless without dispute that there exists a lengthy opening between concrete abutments. Beacon as landowner made the decisions as to what activities could be conducted within and in proximity to the gap and with what notifications.

[46] Beacon has failed to demonstrate that it had no duty in these circumstances. As to breach of duty, the designated materials reveal a dispute as to whether Beacon unreasonably failed to restrict lap swimming to only lanes appropriate for that purpose, to provide adequate signage and barriers, or to maintain the water level for clear visibility of submerged or substantially submerged wing walls. Beacon has failed to "affirmatively negate it's opponent's claim." *Hughley*, 15 N.E.3d at 1003. The trial court did not err in denying summary judgment to Beacon upon the premises liability claim.

# Conclusion

[47] The trial court did not abuse its discretion by striking a portion of the deposition testimony of the Penningtons' designated expert witness; nor did the trial court abuse its discretion in its evidentiary rulings. Summary judgment was not improvidently granted to Spear on the design negligence claim. Summary judgment was properly denied to Beacon upon the premises liability claim.

[48] Affirmed.

Altice, C.J., and Riley, J., concur.